David SIMPSON and Paulette
Wade, Plaintiffs,

v.

CITY OF PICKENS, MISSISSIPPI; Phillip Yarbrough, Individually and in His Official Capacity as Chief of Police for the City of Pickens, Mississippi; and Larry Edwards, Individually and in His Official Capacity as a Police Officer of the City of Pickens, Mississippi, Defendants.

Civ. A. No. 3:94–CV–478(B)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 6, 1995.

Edward Blackmon, Jr., Jessie L. Evans, Blackmon, Blackmon & Evans, Canton, MS, for David Simpson and Paulette Wade.

John Wilson Eaton, III, Phelps Dunbar, Tupelo, MS, William T. Siler, Jr., Phelps Dunbar, Jackson, MS, for City of Pickens, Miss., Phillip Yarbrough and Larry Edwards.

## OPINION AND ORDER

WILLIAM HENRY BARBOUR, Jr., Chief Judge.

Before the Court is the Motion of Defendants the City of Pickens, Mississippi, Phillip Yarbrough and Larry Edwards to Dismiss or in the Alternative for Summary Judgment on the federal and state law claims asserted against them by Plaintiffs David Simpson and Paulette Wade. Both Defendants Yarbrough and Edwards are sued in their individual and official capacities. Having considered the supporting and opposing memoranda and the attached exhibits, the Court finds that summary judgment is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff David Simpson managed and operated a business known as the Pickens Washeteria and Laundromat in Pickens, Mississippi. As part of his managerial position, Simpson was allowed to reside in the back of the premises. Simpson lived there with Co–Plaintiff Paulette Wade.

The allegations in Plaintiffs' Amended Complaint are that on or about July 13, 1994, shortly after 10:00 p.m. (the time at which Simpson had allegedly closed the laundromat), Pickens Chief of Police Phillip Yarbrough came to the building and demanded that Simpson unlock the front entrance. Yarbrough allegedly entered the premises, retrieved an empty beer can and then went out to his police car where he summoned Defendant Larry Edwards, another member of the Pickens police force, to the scene. The Amended Complaint alleges that after Edwards arrived, the two policemen proceeded to brutally beat and victimize Simpson. Specifically, Defendants allegedly handcuffed Simpson, hit him on his forehead with a flashlight thereby inflicting a deep gash on his forehead which bled, threw him into a muddy puddle on the ground and stuffed his face into the mud in a manner which nearly suffocated him. The Amended Complaint alleges that this attack was unprovoked by Simpson and that he offered no resistance throughout.

Plaintiff Wade, who allegedly witnessed these events, allegedly questioned Defendants about their use of force. At that point, Yarbrough allegedly grabbed her on her buttocks "causing her great humiliation, affront, embarrassment and mental and emotional distress from which she still suffers." Am. Compl. ¶ 18.

After Defendants had completed their alleged mistreatment of Simpson, they drove him to Mid–Methodist Hospital in Lexington, Mississippi. It is undisputed that Simpson was hospitalized and was not discharged from the hospital until July 17, 1995, nearly four days after the arrest and the alleged beating occurred.

On July 19, 1994, Plaintiffs filed suit in the Circuit Court of Holmes County, Mississippi. On August 15, 1994, Defendants removed the suit to this Court. Pursuant to 42 U.S.C. § 1983, Plaintiffs alleged that Defendants "deprive[d] ... [them] of their civil rights and in particular ... Simpson's right to freedom from unlawful arrest without evidence in support thereof and freedom from illegal detention and imprisonment." Plaintiffs also asserted claims based upon state tort law.

With respect to both types of claims, Plaintiffs failed to state with any specificity the exact theories of relief under which they hoped to recover.

On September 6, 1994, after Simpson had been granted a continuance, he was tried in the Pickens Municipal Court for the charges of possessing or consuming alcoholic beverages within certain prohibited public locations, disorderly conduct and resisting arrest. On September 7, 1994, the Municipal Judge entered his written final judgment finding Simpson guilty on all three counts. Simpson was fined for each conviction. In addition, for the resisting arrest conviction, Simpson was sentenced to serve thirty days in jail with sentence suspended conditioned upon his future good behavior. Ex. A in Supp. of Mot. to Dismiss. Simpson then appealed his convictions to the Circuit Court of Holmes County, Mississippi. A *de novo* hearing on Simpson's convictions was held on May 31, 1995. This hearing resulted in a mistrial due to the fact that the jurors could not agree upon a verdict. This Court has since inquired of officials of the Simpson County Circuit Court and they have reported that Simpson has not yet indicated what course of action he will pursue.

## II. SUMMARY JUDGMENT STANDARD

Because the parties have submitted and the Court has considered materials outside of the pleadings, the Court will treat the Motion of Defendants as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir.1991). Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

■ The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

## III. DISCUSSION

a) Collateral Estoppel

The Municipal Court Judge concluded:

It is clear to this court that [Simpson] was aware of his being placed under arrest, that he refused the efforts of said Edwards to come peacefully to the police station ... and that defendant forcibly resisted his lawful arrest by said Edwards and Yarbrough, of lawful authority to then arrest him.

Final Judgment at 3, Ex. A in Supp. of Mot. to Dismiss. In view of these findings, Defendants assert that the doctrine of collateral estoppel should operate to bar Plaintiffs' federal claims. Defendants make this contention while acknowledging that Simpson has appealed his convictions to the Circuit Court of Holmes County. Nevertheless, citing *Raju v. Rhodes,* 809 F.Supp. 1229, (S.D.Miss. 1992), *aff'd,* 7 F.3d 1210, *cert. denied,* — U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 194 (1994), Defendants argue that under Mississippi law, the pendency of an appeal does not alter the preclusive effect of a judgment.

■ In stating the proposition that the pendency of an appeal has no effect upon the preclusiveness of a judicial determination, the *Raju* opinion cited as authority *Smith v. Malouf,* 597 So.2d 1299 (Miss.1992). Although *Smith* supports the proposition stated in *Raju, Smith* also stated that

According to Restatement (Second) of Judgments, sec. 13 cmt. f (1982): "... [A] judgment otherwise final remains so despite the taking of an appeal *unless what is called an appeal actually consists of a trial de novo.*"

*Smith,* 597 So.2d at 1302 (emphasis added). The argument of Defendants thus ignores that the principle stated in *Raju* does not apply in those situations where the appeal consists of a trial *de novo.*

As the Court has already stated, Simpson's May 31, 1995, trial *de novo* resulted in a mistrial and the Court has been informed by the Holmes County Circuit Judge that Simpson has not yet decided upon what course of action he will now pursue in the wake of this outcome. Since there was no finding of acquittal, the Court can only assume that the conviction by the Municipal Court Judge still stands. However, the possibility exists that Simpson may again seek another trial of the matter. Simpson has ten days from the date of the mistrial within which to formally request another trial. Accordingly, this Court directs Simpson to inform it by June 16, 1995, as to whether he will continue to pursue an appeal of his criminal convictions by way of seeking another trial *de novo.* If, by the end of this time, the Court has not been informed that Simpson will seek such a trial, the Court will presume that he has decided to let his Municipal Court convictions stand and that they are final. Defendants may at that time ask the Court to revisit the collateral estoppel issue and the Court will do so.

### b) Claims Under § 1983

In *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the United States Supreme Court stated that

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a write of habeas corpus.... A claim of damages bearing that relationship to a conviction or sentence that has not been so invalidated is *not* cognizable under § 1983.

—— U.S. at ——, 114 S.Ct. at 2367. Defendants assert that in view of the findings of the Municipal Court Judge, Plaintiffs' § 1983 claims are not cognizable since they in effect challenge the lawfulness of Simpson's arrest and conviction.

■ The position of Defendants is problematic. Even if the conviction for resisting arrest should ultimately prove to be valid, such a result does not necessarily bar a claim for use of excessive force under the Fourth and Fourteenth Amendments. Put more directly, it is possible for a finding that Simpson was resisting arrest to coexist with a finding that the police used excessive force to subdue him.

While it may prove to be the case that Simpson's claims challenging his allegedly "unlawful arrest" and "illegal detention and imprisonment" would render his convictions for illegal possession of alcoholic beverages and disorderly conduct invalid, it may also turn out that these convictions will be overturned should he decide to renew his appeal in the form of obtaining another trial *de novo*. Accordingly, the Court holds in abeyance a ruling upon the other aspects of his constitutional claims pending a final determination as to the validity of his Municipal Court conviction. *See* discussion *supra* part III(a). If, after that time, Simpson's convictions still stand, the parties may so inform the Court and the Court will rule upon the *Humphrey* concerns in light of that ruling.

Citing, *Fulford v. Klein,* 529 F.2d 377 (5th Cir.1976), Defendants also argue that Simpson's § 1983 claims should be barred since "habeas corpus is the exclusive initial cause of action where the basis of the claim goes to the constitutionality of the state court conviction." *Id.* at 381. The problem with this argument however, is that the *Humphrey* decision rejected the analysis used in *Klein. See, e.g., Boyd v. Biggers,* 31 F.3d 279, 282 (5th Cir.1994). Indeed, the Fifth Circuit opined in *Biggers* that in *Humphrey,* the Supreme Court "adhered to its 'teaching that § 1983 contains no exhaustion requirement beyond what Congress has provided.'" *Biggers,* 31 F.3d at 282. Moreover, in view of *Humphrey,* it appears that the types of concerns originally addressed in *Klein* are now properly addressed by the approach announced in *Humphrey.*

■ With respect to Wade, the Court rules that she has not stated a claim for a deprivation of a Constitutional right. Although she has alleged that Yarbrough grabbed her derriere without her consent and although this may state a claim for battery under Mississippi law, such an action on the part of Yarbrough does not rise to the level of a deprivation of a right guaranteed by the United States Constitution. The Court therefore grants partial summary judgment on Wade's § 1983 claims in favor of all Defendants in both their official and individual capacities.

### c) State Law Claims

■ It is well established that suits against governmental officers and agents in their official capacities are the same as suits against the governmental entity. Therefore, the actions asserted by Plaintiffs against Yarbrough and Edwards in their official capacities are the same as suits against the City of Pickens.

■ The Court finds that *all* of the Plaintiffs' state law claims against the City of Pickens and against the police officer Defendants in their official capacities are barred by sovereign immunity. Mississippi law requires that plaintiffs suing a governmental entity first file an administrative claim with the chief executive officer of that entity and to do so ninety days before bringing such an action. Miss.Code Ann. § 11–46–11(1). Such an act is a jurisdictional prerequisite which must be fulfilled before a plaintiff may file suit. Defendants assert that Plaintiffs did not comply with the administrative claim requirements before they brought their present action. Plaintiffs do not dispute this assertion in any way. Accordingly, the Court grants partial summary judgment on Plaintiffs' state law claims in favor of the City of Pickens and Defendants Yarbrough and Edwards in their official capacities.

Defendants contend that the state law claims asserted against Yarbrough and Edwards in their individual capacities should also be dismissed. Their argument, however, rests upon the assumption that their request for dismissal of Plaintiffs' federal claims will be granted by the Court and that the Court will therefore have no subject matter jurisdiction over the remaining state law claims. In view of the discussion in section III(b) of this Opinion and Order, the position of Defendants is incorrect.

### IV. CONCLUSION

To summarize the preceding discussion, the Court grants partial summary judgment in favor of the City of Pickens and Yarbrough and Edwards in their official capacities on Plaintiffs' state law claims. The Court grants partial summary judgment in

favor of Defendants on Plaintiff Wade's § 1983 claims. The Court denies summary judgment in favor of Defendants on Plaintiff Simpson's § 1983 claims. The Court may revisit portions of this its rulings after the matter of Simpson's appeal of his Municipal Court convictions to the Circuit Court of Holmes County is resolved.

SO ORDERED.